UNITED STATES BOARD & PAPER CO. v. WALLACE F. BROWNE ET AL.

1. REFUSAL TO GIVE PROPER INSTRUCTIONS BEFORE ARGUMENT REVERSIBLE ERROR.

Under Sec. 5190 Rev. Stat. it is the duty of the court, and not a matter of discretion, to give to the jury after conclusion of the evidence and before argument of counsel, such proper written instructions on matters of law applicable to the case as may be presented and requested by either party, and a refusal to give such instructions until after argument is reversible error.

2. AGENT MAY NOT ENTER INTO CONTRACT ANTAGONISTIC TO PRINCIPAL'S INTERESTS.

Where one acting as the director of a corporation votes for a contract with a copartnership of which he is a member, this of itself is not a ground for rescission, but if, in the carrying out of such contract, his efforts are for the interests of his partnership as against the interests of the corporation, the rule requiring good faith to his principal on the part of the agent, will be rigidly enforced.

3. CHARGE REQUIRING UNERRING JUDGMENT AND IGNORING QUESTION OF RATIFICATION ERRONEOUS.

In an action for damages for breach of contract, brought by an agent against his principal, it is not error to refuse to give a charge that overlooks the question as to whether the principal, by acquiescence, shall not be deemed to have ratified the contract, and which instruction also requires not only absolute good faith on the part of the defendant in the execution of the contract, but the exercise of unerring judgment as well.

4. PRINCIPAL MAY RESCIND CONTRACT WITH AGENT, WHEN.

A contract constituting a copartnership selling agent of a corporation, which was entered into on behalf of the latter by members of its board of directors

who were interested in the profits on the contract that would accrue to the copartnership from the corporation, may be rescinded by the latter if unfair to it, and it is error to refuse to charge the jury, that, under these circumstances, the corporation had the right, at its option, to discharge such agent.

5. AGENT NOT ENTITLED TO COMMISSION ON SALES UNDER CONTRACT, WHEN.

Where a selling agency is employed by a corporation for a definite period at a fixed commission on all sales made, it is improper for such agency to charge and retain commissions on purchases made for its own use, although a member of the agency is a stockholder of the corporation and, as such, is entitled to purchase its goods at a, discount.

6. AGENT NOT ENTITLED TO DISCOUNT INTENDED FOR PURCHASER.

A contract by which selling agents are authorized ,to make sales at a certain discount for cash, does not authorize such agents to retain the discount of a sale made by them to a purchaser who did not secure the benefit of the discount.

7. MEASURE OF DAMAGES DOES NOT INCLUDE UNAUTHORIZED COMMISSIONS AND DISCOUNTS.

In instructing the jury as to the measure of damages for breach of a contract of employment to sell goods on a commission and at a discount, it is error to include in such damages the amount of commissions and discounts on purchases made by the agents for their own use, and the discounts saved on sales made by them to others.

ERROR to court of common pleas.

F. M. Gorman and Edward J. Dempsey, for plaintiff in error.

Pogue & Pogue and C. Bentley Matthews, for defendants in error.

MARVIN, J.

The parties here are the reverse of what they were in the court of common pleas; they will, however, be spoken of in this opinion as they stood in the original action.

The original plaintiffs were Wallace F. Browne and Wm. A. Stuart, doing business as a copartnership under the firm name of Browne & Stuart.

Before the last trial in the court of common pleas, the plaintiff, Wallace F. Browne, died and H. C. Yeiser, as administrator of the estate, was made a party in his stead.

The defendant is a corporation organized under the laws of the state of Indiana. The first trial of the case was to the court, a jury having been waived, and resulted in a judgment for the defendant. This judgment was reversed by this court and the case remanded to the court of common pleas. The case was then tried in that court to a jury, resulting in a verdict and judgment for the plaintiffs.

By proper proceedings this last judgment is here for review. A bill of exceptions showing the proceedings upon the trial, including all the evidence, is filed here.

United States Board & Paper Co. v. Browne.

The issues upon the last trial differed somewhat from the issues as they were in the first trial, such difference resulting from an amended answer filed in the case and a reply filed thereto.

The plaintiffs claim that the defendant was a manufacturer of straw board for use in making paper boxes; that on December 19, 1896, defendant entered into a contract with plaintiffs, by which plaintiffs were to act as the selling agents of the defendant for one year from that date, and the defendant agreed to pay plaintiffs for services, as such agents, a commission of seven per cent. on the sale of all goods sold by them. Plaintiffs undertook the performance of the contract on their part, and acted as such selling agents up to April 26, 1897, when they were discharged from such employment; plaintiffs say they have been ready, able and willing to perform all the conditions of said contract to be performed by them, but they have been prevented from doing anything thereunder since April 26, 1897, and pray for damages.

The defendant says that whatever contract was made with the plaintiffs was the adoption of a resolution by its board of directors, on December 19, 1896, which was in these words:

"*Be it Resolved,* That we employ Browne & Stuart as selling agents for the company for one year, at a commission of seven per cent., all sales being subject to the usual cash discount of three per cent., that is, in ten days from the date of shipment, and all payments to be made in cash."

At the time of the adoption of this resolution the plaintiff, Wallace F. Browne, was one of the board of directors of the defendant; the other members being Charles W. Bell, H. C. Yeiser, Jackson H. Duncan and Henry M. Wrigley. The said Charles W. Bell was an employe of the plaintiffs, Browne & Stuart.

It is alleged on the part of the defendant that Browne & Stuart, Yeiser and Bell conspired together to have said resolution adopted for the purpose of giving to said Browne & Stuart the contract to act as selling agents of the defendant for a compensation much greater than should have been paid to them, and that but for the votes of said Browne, Bell and Yeiser, said resolution would not, and could not have been adopted; that they, the three last-named, all voted for it; that said Browne was president of the defendant company, and that said Yeiser was an intimate, confidential friend of both said Browne and Stuart; that said Bell made a contract with said Browne & Stuart, whereby he was to act for and with them in the sale of the product of the factory of said defendant, and to receive for his services one-half of the profits of the sale of said product provided for in said resolution to be paid to said Browne &

Stuart; that the stockholders of said defendant company were ignorant of the terms of the resolution hereinbefore quoted, and of the fact that any such contract had been made with said Browne & Stuart.

The answer further avers that said Browne & Stuart and Bell were promoters of said defendant company, and brought about its organization, and that it was supposed by the other directors that this contract was in part made as payment for their services in bringing about the organization of said corporation.

It is further averred that said Bell was the managing agent of the defendant company, and that said Browne & Stuart were to pay him in full for his services as such managing director out of the profits which *they* should make under said resolution; that the corporation was organized by the stockholders for the reason that most of them were consumers of straw board such as was to be manufactured by the defendant, and that the price at which such straw board was sold in the market was much higher than it could be produced for, and the design and purpose was to organize the defendant and produce the straw board and furnish it to the stockholders at a reasonable price—much less than the market price which they were required to pay for said board.

By-law No. 8 of the defendant company reads:

"The stockholders of the company shall have the privilege of buying in any one year the product of the mill of this company in the proportion that the amount of the stock owned by them bears to the capital stock of the company, and the price to stockholders only shall not exceed $22.51 per ton for plain, steam-dried straw board, free on board, at the mill, and the price on all other products of the mill shall be on the same relative basis as determined by the board of directors, and the board of directors are hereby empowered and directed to have said deliveries made as soon as possible, preference being given to all orders of stockholders over those who are not stockholders."

. The product of the mill was not greatly in excess of the amount which the several stockholders needed in their business.

There was no meeting of the board of directors after the date of the passage of the resolution employing Browne & Stuart as selling agents, until April 26, 1897, at which a resolution was adopted discharging said Browne & Stuart from their agency.

The course pursued by Browne & Stuart in the selling of the pro--ducts of the mill was to have all the goods billed to them; then they billed to the several stockholders the goods which they purchased under by-law No. 8 and charged the commission of seven per cent. on all these sales,

United States Board & Paper Co. v. Browne.

and also credited to themselves three per cent. as for cash payment of the goods.

The claim of the defendant is that the contract was a burdensome one upon it, unfair in its terms, and brought about by the unfair action of the plaintiffs and Bell.

The defendant claims further that the course pursued by the plaintiffs in disposing of the goods and charging up both the seven per cent. commission and the three per cent. discount on goods taken by stockholders of the corporation, was taking an unfair advantage of the defendant, and that the action taken by the defendant in removing them was taken as early as it could be after the facts had become known to the stockholders and a board of directors could be secured which was fair and unprejudiced.

The plaintiffs reply to the answer, pleading a ratification of the contract by their being permitted to go on for the period of four months without interference by the defendant; and also denying all unfairness in the terms of the contract and in the manner of its procurement and its execution.

When this case was in this court before, it was held (Browne v. Board & Paper Co. 11 Circ. Dec. 102 (20 R. 351), that the mere fact that the contract was made with Browne & Stuart while Browne was one of the directors of the defendant company, was not, in itself, sufficient to avoid the contract.

It was further said by the court at that time that there seemed to be nothing unfair in the contract itself.

The court, in its opinion, called attention to the fact that the other issues sought to be made in the case, to wit, the improper manner in which Browne & Stuart had sought to carry out the contract, charging commission and discounts for sales made to stockholders of the company, and the question of ratification, were not made by the pleadings.

*These* questions *are* made in the present case.

Among other complaints made by the defendant is that the court refused to give in charge to the jury before the argument of the case, certain propositions furnished to the court by the defendant in writing, with a request that they be charged before argument.

Section 5190 Rev. Stat., Subdiv. 5, provides:

"When the evidence is concluded, either party may present written instructions to the court on matters of law, and request the same to be given to the jury, which instructions shall be given or refused by the court before the argument to the jury is commenced."

Under this provision of the law it is, undoubtedly, the right of a

party to have given to the jury before argument such written proposi-
tions as he may request, provided such propositions properly state the
law applicable to the case.   It is not a matter of discretion with the court
to withhold the giving of such propositions until after the case is argued,
and, if propositions were requested in this case which should have been
given before argument, the refusal to give such propositions was error,
for which the case should be reversed.

The defendant submitted, in writing, eight propositions to the court;
each was refused, and the proper exceptions taken to such refusal.

The *first* of these propositions was to the effect that if Browne was
a director of the defendant company, and, at the same time, a member
of the firm of Browne & Stuart at the time the contract was made, such
facts alone would warrant the company in rescinding the contract.   The
holding of the court in this case when it was here before was sufficient
to authorize the court to refuse to give this instruction.

The *second* proposition was that if Browne, Bell and Yeiser were
interested directly or indirectly in this contract, and were members of the
board of directors at the time the resolution was adopted, and voted for
it, such facts would warrant the company in rescinding the contract.   For
the same reason that the court was justified in refusing the first proposi-
tion, it was justified in refusing this.

The *third* proposition requested was in these words:

"If you find from the evidence, that the plaintiffs, Browne & Stuart,
while acting as selling agents for the defendant company under the resolu-
tion of employment of December 19, 1896, so conducted the selling agency
as to make a profit for themselves which might and should have gone to
the defendant company, I charge you that such conduct on their part
would constitute a good reason for their discharge by the defendant com-
pany."

This proposition should have been given; there was evidence in the
case justifying it; there was evidence from which the jury might well
have found that the manner in which this selling agency was conducted by
Browne & Stuart was *not* for the best interests of the company.

Surely, if the contract entered into with Browne & Stuart, authorized
them to deduct a commission of seven per cent. and a discount of three
per cent. on such product of the mill as was taken by stockholders of the
company under by-law No. 8, it was a most extraordinary contract for
the company to have made, and, though this court said when the case was
here before, that the mere fact that directors of the company were in-
terested for the parties with whom the company made the contract, was
not in itself sufficient to warrant the rescinding of such contract, still a

contract made by directors of a corporation with themselves as individuals, or with copartnerships in which they are interested, should be scrutinized with care. The temptation is very strong for one to look after his own interests, rather than the interests of his *cestui que trusts* where such interests conflict.

Surely, where one acting as the director of a corporation, votes for a contract with a copartnership of which he is a member, if in the carrying out of such contract, his efforts are for the interests of his partnership as against the interests of the corporation, the rule requiring good faith to his principal on the part of an employe, should be rigidly enforced.

"A man cannot serve two masters." And, if in the serving of the one, "he" (to use the language of the request) "so conducted the business as to make a profit for himself which might and should have gone to the defendant company," he has endeavored to serve the wrong master, and the other may discharge him.

The *fourth* proposition requested is in these words:

"If you find from the evidence, that the plaintiffs, Browne & Stuart, while acting as selling agents for the defendant company, violated any duty which they owed to the defendant company as agents, or failed to sell the product of the defendant company to the best advantage for the defendant company so as to realize the best profits to the company, or if they, or either of them, interfered with the management of the defendant company's business without authority from the board of directors, or if they failed in any other respect to perform their entire duty toward the defendant company, I charge you that such conduct would constitute a justification for their discharge and the defendant company was warranted in dispensing with their services, and the plaintiffs cannot recover in this action."

This proposition, if given, would have required the jury to overlook all questions of ratification, and also to have justified the defendant in discharging the plaintiffs for the slightest failure to perform their whole duty for the defendant.

We think the court was justified in refusing this proposition. It differs from the *third* in that it requires not only absolute good faith on the part of the plaintiffs, but the exercise of unerring judgment, and, as already said, would entirely do away with all questions of ratification. The refusal to give this request would not justify a reversal.

The *sixth* proposition reads:

"If you find from the evidence that the plaintiffs, Browne & Stuart, charged the defendant company with commissions upon goods which they, the plaintiffs, purchased from the defendant company, even though the

23  Vol. 25 O. C. C.

plaintiffs were entitled as stockholders to purchase a part of the product of the defendant company's mill, the commissions which they charged, and took, upon any portion of the product of defendant's mill, to which they might be entitled, was an improper charge and a wrongful act upon the part of the plaintiffs, and such conduct upon their part would justify their discharge by the defendant company."

This proposition should have been given. If this is not the law properly applicable to this case, then we have the extraordinary proposition that this company made a contract with Browne & Stuart by which they should not only have a commission on all the goods which they directly or indirectly sold to anybody else, but also that they might have a commission on goods which they themselves took by virtue of by-law No. 8. It seems incredible that such construction should be given to the contract. We think it clearly could not have been intended by the company, and would be such an injustice as would justify the company in discharging the plaintiffs.

The *seventh* proposition was properly refused. A fair construction of the resolution of December 19, 1896, is that the mill was to be operated for a year and the plaintiffs were to sell the product for that time.

The *eighth* proposition reads:

"If you find from the evidence that the contract of agency between the plaintiffs and the defendant company, entered into on the nineteenth day of December, 1896, was, in any wise, unfair or unjust to the defendant company, then I charge you that by reason of that fact and the further facts, if you should so find, that Browne and Bell were directors of the defendant company and participated in the making of the contract with the defendant company while acting as such directors and were also interested in the profits of the contract which they were making for themselves with the company, the defendant company had the right, at its option, to discharge the plaintiffs, Browne and Stuart, and terminate the agency."

It is possible that we would not feel justified in reversing the judgment in this case because of the failure to give this proposition, although in the main, we believe that it properly states the law. It is possible, however, that it might have misled the jury upon the matter of ratification. Except for this, we see no reason why the proposition should not have been given, for though, as already stated, the mere fact that directors of the corporation were interested on the other side of the contract would not alone justify a rescission of the contract, yet when by the votes of directors of the corporation, who *are* interested on the other side of the contract, a contract unfair to the corporation is made—when such facts become known, the corporation is justified in rescinding such contract.

United States Board & Paper Co. v. Browne.

Complaint was further made of what was said by the court in its charge to the jury. Among other things, the court said, as appears on page 347 of the bill of exceptions:

"It is very clear that some one was to have the benefit of three per cent. for cash payments on the sales, that is, for ten days, meaning thereby that if it was spot cash at the time of the transaction, or cash within ten days after the transaction, for such a transaction some one was entitled to three per cent. in addition to the seven per cent. that the agents were to receive as their commission for the sale of the product of the mill."

We think this was calculated to mislead the jury. The purchaser of the goods was entitled to a discount of three per cent. for cash paid within ten days of the sale; nobody else was entitled to it. This three per cent. was not to be paid to the selling agents, but was to be allowed the purchaser. If the purchaser failed to get this, it would not be lawful for the agent because he had made a sale for his principal whereby he saved that three per cent. to appropriate it to himself; his principal would be entitled to that.

In its instructions to the jury as to the measure of damages to which the plaintiffs would be entitled if they were entitled to recover in the case, the court directed the jury that in estimating such damages they should allow seven per cent. on the entire product of the mill from the time the plaintiffs were discharged, up to the end of the year for which they were originally employed; and, in addition thereto, said to them that if the plaintiffs paid cash, and it might be assumed that they would, they were entitled to an additional three per cent. as discounts on the sale, deducting therefrom whatever expense the plaintiffs would be put to in the performance of their work as sales agents.

We think this was erroneous. It is upon the same theory as has already been commented upon, that the agents who made the sales were to have the three per cent. discount, and further, upon the theory that they were to have both commissions and discounts on so much of the product of the mill as they themselves took under by-law No. 8. What has already been said in the case express our views upon this subject.

In any proper view of the case, we think it clear that the damages allowed were excessive, and excessive because the jury must have computed something more than seven per cent. on the entire product of the mill in order to reach the verdict which they did. This they should not have done. For these errors the judgment of the court of common pleas is reversed, and the case remanded for further proceedings.